MARGARET A. MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
LEO S. WOLPERT, Nevada Bar No. 12658
DAYVID FIGLER, Nevada Bar No. 4264
**MCLETCHIE LAW**
701 East Bridger Avenue, Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LANCE DOWNES-COVINGTON, an individual, SOLDADERA SANCHEZ, an individual, ROBERT O'BRIEN, an individual, EMILY DRISCOLL, an individual, ALISON KENADY, an individual, TENISHA MARTIN, an individual, GABRIELA MOLINA, an individual,<br><br>         Plaintiffs,<br><br>  vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, in its official capacity; SHERIFF JOSEPH LOMBARDO, in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department; LIEUTENANT KURT MCKENZIE, as an individual and in his capacity as a Las Vegas Metropolitan Police Department Officer; OFFICER TABATHA DICKSON, as an individual and in her capacity as a Las Vegas Metropolitan Police Department Officer, UNKNOWN OFFICERS 1-14, as individuals and in their capacity as Las Vegas Metropolitan Police Department Officers,<br><br>         Defendants. | Case. No.: 2:20-cv-01790-GMN-DJA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER THE PARTIES' CLAIMS (ECF NO. 8)** |

Plaintiffs LANCE DOWNES-COVINGTON, SOLDADERA SANCHEZ, ROBERT

O'BRIEN, EMILY DRISCOLL, ALISON KENADY, TENISHA MARTIN ("Plaintiffs") by

and through their counsel of record, hereby submit this Response to Defendants' Motion to Sever the Parties' Claims, or in the Alternative, Motion for Partial Dismissal (ECF No. 8). This Response is based upon the following Memorandum of Points and Authorities, the papers and pleadings already on file herein, and any oral argument the Court may permit at a hearing.

DATED this 17th day of November, 2020.

/s/ Alina M. Shell
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
LEO S. WOLPERT, Nevada Bar No. 12658
DAYVID FIGLER, Nevada Bar No. 4264
MCLETCHIE LAW
701 East Bridger Avenue, Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300
Email: maggie@nvlitigation.com
*Counsel for Plaintiffs*

MCLETCHIE LAW

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Named Defendants—the Las Vegas Metropolitan Police Department ("Metro"), Sheriff Joseph Lombardo, Lieutenant Kurt McKenzie, and Officer Tabatha Dickson—move to sever the parties' claims into seven separate lawsuits, which would result in judicial inefficiency and prejudice Plaintiffs in this civil rights matter. The Court must deny Defendants' request.[1]

Defendants contend that Plaintiffs are "improperly attempting to litigate seven separate lawsuits as a single action." (ECF No. 8, p. 2:8–9.) However, pleading these seven Plaintiffs' claims jointly is not only permitted under the Federal Rules of Civil Procedure, but encouraged to promote judicial efficiency and eliminate duplicitous proceedings. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (noting the "impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged"); *see also* Fed. R. Civ. P. 1 (advising that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

All of the Plaintiffs attended (either as protesters or in an official capacity as legal observers) a series of connected protests in support of the Black Lives Matter ("BLM") movement, where they were subjected to (and bore witness to) Metro's longstanding custom of violating peaceful protesters' constitutionally-protected rights. Metro and its officers violated Plaintiffs' rights through the use of unreasonable and excessive force (including the

---

[1] Defendants styled their motion as a motion to sever or, in the alternative, a motion for partial dismissal. Local Rule IC 2-2(b) mandates that "[f]or each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document." Given that Defendants' motion seeks two forms of relief—severance or dismissal of certain claims—Defendants should have filed two separate motions. Plaintiffs intend to address Defendants' request for severance in the instant response, and will submit a separate document responding to Defendants' motion for partial dismissal.

indiscriminate firing of tear gas and pepperballs at crowds of peaceful protesters); through pervasive violations of its own use-of-force policies; through intimidating use of military-style tanks and riot gear; through forceful detention and/or arrest of law abiding persons without reasonable suspicion or probable cause; and, through targeting those engaged in (or observing) protected speech critical of police brutality. (*See, e.g.*, ECF No. 1, pp. 2–3.)

Although Defendants urge this Court to hold that Plaintiffs' claims have little in common and merit separate lawsuits, the opposite is true. Under the two-prong test for permissive joinder of parties provided in Federal Rule of Civil Procedure 20, Plaintiffs are properly asserting their right to relief in a single lawsuit. The Complaint concerns the same transactions or occurrences—a series of connected protests in Las Vegas over a thirty-six-day period[2]—and Plaintiffs' claims share at least one common question of law or fact—whether Metro has demonstrated a policy or practice of engaging in excessive force against peaceful protesters and legal observers. Rather than acknowledge that reality and permit this Court to decide Plaintiffs' claims in a single action, Defendants are trying to unnecessarily multiply the proceedings to stymie Plaintiffs and other civil rights claimants from seeking a just and efficient resolution of their constitutional claims. Thus, permissive joinder is proper, and Defendants' Motion to Sever should be denied.

## II.    PROCEDURAL HISTORY AND FACTUAL ISSUES

On September 25, 2020, Plaintiffs filed their Complaint alleging fourteen causes of action arising under federal and state law. (ECF No. 1). All named Defendants were properly served on September 29, 2020. (ECF Nos. 6, 6-1, 6-2, 6-3.) On October 20, 2020, Defendants filed the instant Motion, arguing for severance of the parties' claims or, alternatively, partial dismissal. (ECF No. 8.)

Plaintiffs' claims all arise from interactions with Metro and its officers acting under color of law at connected BLM protests that occurred over a thirty-six-day period in Las

---

[2] As measured between the first protest pleaded in Plaintiffs' Complaint (May 30, 2020) (ECF No. 1, ¶¶ 79–89, 130–152, 191–209) and the last protest pleaded in Plaintiffs' Complaint (July 4, 2020). (*Id.*, ¶¶ 118–127, 246–264.)

MCLETCHIE LAW
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Vegas on May 30, 2020; June 1, 2020; June 13, 2020; July 4, 2020.[3] Plaintiffs Soldadera Sanchez, Robert O'Brien (as a legal observer), and Tenisha Martin were all present at the protest on May 30, 2020. (ECF No. 1, ¶¶ 11, 13, 21.) Upon information and belief, only Plaintiff Lance Downes-Covington was present at the protest on June 1, 2020. (*Id.* at ¶ 8.) Five of the seven Plaintiffs—Ms. Sanchez, Emily Driscoll (as a legal observer), Alison Kenady, Ms. Martin, and Gabriela Molina (as a legal observer)—were all present at the protest on June 13, 2020, and were "kettled" down the same street together. (*Id.* at ¶¶ 11, 15, 18, 21, 24.) Lastly, Ms. Sanchez and Ms. Martin co-organized and were both present at the protest on July 4, 2020. (*Id.* at ¶ 11, 21.)

In sum, at least two Plaintiffs—and as many as five—were present at each of the aforementioned protests, except for the protest on June 1, 2020, where it currently appears only Mr. Downes-Covington was present.[4] Significant overlap exists among the Plaintiffs' experiences, and all of their pleaded facts together support Plaintiffs' overall theory and argument that Metro has a pervasive policy and practice of using excessive force to violate peaceful protesters' constitutional rights when they are engaged in protected speech critical of police brutality.

In their Motion's Statement of Facts, Defendants take painstaking efforts to separate Plaintiffs into seven discrete "lawsuits" (ECF No. 8, pp. 3–7.) By presenting their Statement of Facts one plaintiff at a time, with no mention of any other plaintiff within each

---

[3] Other BLM protests occurred in Las Vegas throughout the summer and have continued into the fall (*see, e.g.*, ECF No. 1, p. 7 n.4), but Plaintiffs' claims arise from the incidents that occurred at protests on these four dates specifically. Thus, Plaintiffs have limited their pleadings to the facts stemming from protests that at least one Plaintiff attended, either as a protester or a legal observer.

[4] Given that some Plaintiffs are long-time protesters and/or protest organizers (ECF No. 1, ¶¶ 10, 17, 20) and that at least one legal observer Plaintiff—Ms. Molina—attended multiple protests throughout May and June of 2020 (*Id.*, ¶ 265), it is possible that additional Plaintiffs other than Mr. Downes-Covington were present at the June 1, 2020, protest. Once discovery commences, the parties will be better positioned to determine which parties—including which Defendants—were present at each protest.

MCLETCHIE LAW
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1  plaintiffs' section, Defendants deliberately ignore that Plaintiffs' injuries did not occur in a

2  vacuum. As mentioned throughout the Complaint and this Response, several Plaintiffs were

3  together for all or part of the alleged events—or at a minimum, were present at the same

4  protest on the same date. For example, Defendants state that "[t]hroughout the evening,

5  Molina followed the protesters" (ECF No. 8, p. 7:9–10) but neglect to mention that Ms.

6  Driscoll accompanied Ms. Molina for the duration of the protest on June 13, 2020.[5]

7          For further example, Defendants describe that Ms. Sanchez organized protests on

8  May 30, 2020; June 13, 2020; and July 4, 2020. (ECF No. 8, pp. 3–4.) Later, in describing

9  the facts alleged by Ms. Martin, Defendants note that Ms. Martin organized protests on those

10  same three dates but make no mention of co-organizer Ms. Sanchez. (*Id.*, pp. 6–7.) By failing

11  to cross-reference Ms. Sanchez and Ms. Martin in their respective sections, Defendants give

12  the false impression that Ms. Sanchez and Ms. Martin somehow organized separate protests

13  on each of those dates. To the contrary, Ms. Sanchez and Ms. Martin collaborated to organize

14  these protests over abuses of police authority[6], which militates against fracturing this one

15  lawsuit into many.

16          As the Complaint states, five of the seven plaintiffs attended the same protest on

17  June 13, 2020, and were part of the same crowd who observed the same conduct by Metro.

18  (ECF No. 1, ¶¶ 90–117, 153–187, 210–241, 265–328.) This Court should reject Defendants'

19  attempt to misrepresent these clear allegations by falsely implying that none of Plaintiffs'

20  claims arise "out of the same transaction, occurrence, or series of transactions or

21  occurrences" under Fed. R. Civ. P. 20(a). Although Defendants aim to convince the Court

22  that the Plaintiffs' claims have no "logical relationship" and "do not 'share an aggregate of

23

24  [5] Indeed, Ms. Driscoll and Ms. Molina were concurrently detained, arrested, and were even

25  transported to the Clark County Detention Center ("CCDC") in the same van. (ECF No. 1, ¶¶ 153, 173–75, 267, 300, 311.)

26  [6] *See, e.g.*, ECF No. 1, ¶ 79 (noting that Ms. Sanchez organized the May 30, 2020 protest

27  with Ms. Martin); ¶ 90 (noting that Ms. Sanchez and Ms. Martin co-organized the June 13, 2020 protest); ¶ 119 (noting that Ms. Sanchez and Ms. Martin raised funds for food and

28  supplies for the July 4, 2020 protest).

operative facts'" (ECF No. 8, pp. 8:28, 9:20), the Complaint plainly alleges that Plaintiffs' claims arise out the same series of related protests. Further, because their claims share common questions of law or fact—*i.e.*, whether Metro's policies or practices constituted deliberate indifference to Plaintiffs' constitutional rights—permissive joinder is proper, and Defendants' Motion should be denied.

## III.    LEGAL STANDARDS

### A.  Permissive Joinder Standard

Read together, Federal Rules of Civil Procedure 20 and 21 govern the joinder—and misjoinder—of parties in the same lawsuit. "Rule 20(a) imposes two specific requisites for joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all parties will arise in the action." *League to Save Lake Tahoe*, 558 F.2d at 917 (citation omitted).

"Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences'—a single transaction is not required." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). Rule 20 provides courts with considerable discretion in granting joinder of parties. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) (citing *In re EMC Corp.*, 677 F.3d at 1360). Rule 21(a)(3) provides that "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20(a)(3). Rule 21 concisely states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

Rule 20, which governs permissive joinder, "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe*, 558 F.2d at 917 (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974)). The U.S. Supreme Court underscored

this liberal approach to permissive joinder by stating that "'[u]nder the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; *joinder of claims, parties and remedies is strongly encouraged*.'" *League to Save Lake Tahoe*, 558 F.2d at 917 (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)) (emphasis added). "[T]he primary purpose [of the permissive joinder rule] is to *promote trial convenience and to prevent multiple lawsuits*." *League to Save Lake Tahoe*, 558 F.2d at 917 (emphasis added). Because this Court has substantial discretion to allow joinder of parties and because Plaintiffs have demonstrated that both prongs of the test for permissive joinder are met, this Court should deny Defendants' Motion and permit the lawsuit to proceed as filed.

## IV.    ARGUMENT

### A.  This Court Should Strike Defendants' Motion for Failure to Comply with the Local Rules.

Local Rule IC 2-2(b) mandates that "[f]or each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document." As the Court has recently explained, this Rule is quite straightforward:

> The Local Rule at issue requires the filer to file the same document on the docket more than once, depending on the number of requests contained in the document. Each time the document is filed, the filer must select a different type of event. For example, if plaintiffs prepare a motion to compel, and if within that motion is a request for sanctions, plaintiffs must file that motion twice on the docket. Each filing must reflect a different event. The first filing event being a "motion to compel" and the second, a "motion for sanctions."

*Mendoza v. Amalgamated Transit Union Int'l*, No. 218CV00959JCMCWH, 2019 WL 9100188, at *7 (D. Nev. June 24, 2019), report and recommendation adopted, No. 2:18-cv-959-JCM-DJA, 2020 WL 2112121 (D. Nev. May 4, 2020). Here, Defendants moved the Court for two forms of relief: severance of the Plaintiffs' claims or dismissal of some of Plaintiffs' claims. Thus, Defendants were required to comply with LR IC 2-2(b)'s separate filing requirement. Because Defendants failed to comply with LR IC 2-2(b), this Court should strike Defendants' improperly-filed motion. *See* LR IC 7-1 ("The court may strike

documents that do not comply with these rules.").

**B. This Court Should Deny Defendants' Motion to Sever Because Permissive Joinder is Proper.**

As discussed *supra*, courts have wide discretion to allow joinder of parties under Federal Rule of Civil Procedure 20. *Campbell*, 903 F.3d at 1112 (citing *In re EMC Corp.*, 677 F.3d at 1360). Moreover, courts are tasked with construing, administering, and employing the Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In order to promote judicial efficiency, prevent duplicative lawsuits, and limit prejudice to Plaintiffs, this Court should deny Defendants' Motion to Sever and allow the lawsuit to proceed as filed, because Plaintiffs' have demonstrated that both prongs of the permissive joinder test are met.

**1. Permissive Joinder Is Proper Because Plaintiffs Assert Their Right to Relief with Respect to the Same Series of Transactions or Occurrences.**

The first prong of the permissive joinder test is that "[p]ersons may join in one action as plaintiffs if . . . they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). The phrase "transaction and occurrence" is applied liberally and broadly. *Albright v. Yates*, 362 F.2d 928, 929 (9th Cir. 1966); *League to Save Lake Tahoe v. Tahoe Regional Water District*, 558 F.2d 914, 917 (9th Cir. 1977). The terms "transaction and occurrence" must be applied "flexibly, so as to prevent the wasteful expenditure of parallel proceedings." *United States v. Intrados Intern. Gr.*, 277 F.Supp.2d 55, 61 (D.D.C. 2003); *accord Transcon. Ins. Co. v. Precision Constr., Inc.*, No. 2:06-cv-00533-RCJ-GWF, 2008 WL 11452536, at *2 (D. Nev. Jan. 18, 2008).

Defendants contend that "[P]laintiffs fail to satisfy both the first and second prongs of the test for permissive joinder" (ECF No. 8, p. 9:10–11), reasoning that "[w]hile some of the alleged incidents involve the same transaction, such as Molina and Driscoll or Sanchez and Martin, not all plaintiffs were part of each incident. The incidents occurred on different dates, at different locations, and involve different plaintiffs and defendants." (*Id.*, p. 9:12–15.) Defendants further argue that "[t]hese incidents do not 'share an aggregate of operative

9

facts'" (*Id.*, p. 9:20) and that "[i]n fact, the only connections are that the incidents involved protests and that law enforcement was involved. However, the mere fact that law enforcement is involved is insufficient to create a common transaction or occurrence." (*Id.*, p. 9:20–25 (citations omitted).)

In *United States v. Mississippi*, 380 U.S. 128 (1965), "the United States sued Mississippi, three election commissioners, and six county voting registrars, alleging that the defendants were acting to deny the right of black citizens to vote. Five of the voting registrars moved for severance, and the district court held that they could not be sued jointly. *Id.* at 131. The Supreme Court, however, held that joinder was proper under Rule 20 because the registrars were engaged in a 'series of transactions or occurrences.'" *In re EMC Corp.*, 677 F.3d at 1356 (citing *United States v. Mississippi*, 380 U.S. at 142–43) (internal citations omitted).

The four primary protests Plaintiffs have pleaded as part of their Complaint—those occurring on May 30, 2020; June 1, 2020; June 13, 2020; and July 4, 2020—were part of "a series of transactions or occurrences," as contemplated by Rule 20 and consistent with the United States Supreme Court's holding in *United States v. Mississippi*. "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences'—a single transaction is not required." *In re EMC Corp.*, 677 F.3d at 1356. In assessing what constitutes a "transaction," the Defendants only cited the first of the following sentences and omitted the second, in bold (ECF No. 8, p. 8:23–26): "'Transaction' is a word of flexible meaning. ***It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship***." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) (emphasis added). Because "transaction" is a flexible phrase, the Court's interpretation of "transaction" must be equally flexible.

Defendants rely on *Coughlin v. Rogers* (130 F.3d 1348 (9th Cir. 1997)) for the contention that because "[t]he incidents occurred on different dates, at different locations, and involve different plaintiffs and defendants," Plaintiffs cannot meet the requirements for permissive joinder. (ECF No. 8, p. 9:14–15.) However, the facts of the instant case are

distinguishable from *Coughlin*. *Coughlin* involved forty-nine plaintiffs—as opposed to seven here—who all sought action on each of their individual and separate applications or petitions that were pending before the Immigration and Naturalization Service ("INS"). *Coughlin*, 130 F.3d at 1349–50. The Ninth Circuit affirmed the district court's decision to grant the defendant's motion to sever, adopting the district court's holding that "[p]laintiffs fail[ed] to satisfy both the first and second prongs of the test for permissive joinder." *Id.* at 1350. The Ninth Circuit provided little analysis in its decision, but it included—and seemingly adopted—the district court's decision in full. *Id.* at 1350–51.

As to the first prong of the permissive joinder test, the *Coughlin* court reasoned that mere allegations of "general delay" in the processing of dozens of individual applications was "not enough to create a common transaction or occurrence." *Id*. In *Coughlin*, there were substantial differences between the various underlying injuries and their causes: "Each Plaintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed in some instances and varies from case to case. And, most importantly, there may be numerous reasons for the alleged delay." *Id.*

Unlike in *Coughlin*, the seven Plaintiffs in the instant matter attended the same series of protests in the same city championing the same cause. They suffered many of the same violations of their rights at the hands of the same Defendant police department and its officers. Plaintiffs may not have been struck by the exact same pepperballs or exposed to the exact same cloud of tear gas, but they were subjected to the same tactics of excessive force and intimidation that Metro used at each of the pleaded protests. Presumably, those tactics were informed by Metro's policies and procedures, and training curricula.

In *Coughlin*, the district court also concluded that the plaintiffs had not alleged "that their claims arise out of a systematic pattern of events" or that the INS had "a pattern or policy of delay in dealing with all applications and/or petitions." *Id.* This is distinguishable from the instant case, where the Plaintiffs did allege that "Defendant Metro is aware of and has either explicitly or implicitly condoned or created a policy and practice of allowing Metro officers to deliberately violate the constitutional rights of persons engaging in free speech

activities, such as peaceful protests." (ECF No. 1, ¶ 26.) Unlike in *Coughlin*, where the forty-nine plaintiffs were each differently situated[7]——the seven plaintiffs in the instant case have a great deal in common. They all attended at least one of a series of connected, ongoing protests in Las Vegas, Nevada, where they were exposed to and/or witnessed the same excessive force and violent crowd-control tactics that Metro used at the protests. Thus, permissive joinder is proper, and Plaintiffs' lawsuit should not be severed.

Defendants also rely on an unpublished case (ECF No. 8, pp. 8–9, citing *Woods v. Curry* (2012 WL 4801422 (N.D. Cal. 2012))) from the Northern District of California, which is not binding on this Court. *Starbuck v. City & Cty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.") Even if the Court considers *Woods* as persuasive authority, the facts of *Woods* are also distinguishable from the facts of the instant case.

The *Woods* was a lawsuit brought by a single *pro se* prisoner under 42 U.S.C. § 1983, and addresses when defendants, not plaintiffs, can be joined in one action and. The *Woods* complaint included four claims against forty-one defendants, and the plaintiff alleged "that he was denied law library access, improperly given an upper bunk, denied kosher meals, had his trust account frozen, subjected to excessive force, placed in mechanical restraints that were too tight, denied adequate care for his back, had his medical condition misdiagnosed, strip searched, had his personal property taken, forced to eat with his hands, disciplined without due process, given inadequate medication." *Woods*, 2012 WL 4801422 at *2. The *Woods* court held that the plaintiff's "different claims all arise from distinct incidents involving different prison officials" and noted that the plaintiff appeared "to be complaining in a single complaint about virtually everything that has happened to him that he finds objectionable in the year after he was transferred to California Training Facility." *Id.*

"Rule 20(a) requires that a plaintiff cannot assert a grab-bag of unrelated claims against different defendants." *Id.* However, being subjected to various kinds of injustices and

---

[7] The *Coughlin* plaintiffs fell into "six distinct categories" based on their citizenship and the type of relief they were seeking from INS. *Coughlin*, 130 F.3d at 1349–50.

MCLETCHIE LAW

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

rights violations at the hands of forty-one defendants over a year-long period is quite different from the suit brought by the seven Plaintiffs here, who were subjected to similar injustices and violations of the same rights—free speech, assembly, freedom from unlawful searches and seizures, substantive due process, and equal protection—at four distinct protest events, which were part of a series of ongoing protests in Las Vegas and occurred over a thirty-six-day period. While the *Woods* plaintiff asserted many unrelated claims (such as being denied library access in the prison and being subjected to excessive force), Plaintiffs in the instant case alleged connected claims stemming from what appears to be a policy and practice of Metro to use excessive force and other violent crowd-control measures on peaceful protesters; alleging that Metro and its officers unreasonably used excessive force and other violent crowd-control measures on protesters, legal observers, journalists, and others at continuing protests that occurred on different dates is a proper use of permissive joinder.

In another example of a case involving misjoinder—distinguished from the instant case—137 named plaintiffs sued 25 financial institutions in a single complaint; the Ninth Circuit held that the parties were misjoined under Rule 20(a) because the plaintiffs' claims neither arose from "the same transaction, occurrence, or series of transactions or occurrences" nor did a common question of law or fact exist amongst all the plaintiffs. *Visendi v. Bank of Am. N.A.*, 733 F.3d 863, 866, 870–71 (9th Cir. 2013). In its analysis of the first prong of the permissive joinder test, the *Visendi* Court noted that the first prong "requires factual similarity in the allegations supporting Plaintiffs' claims" which was absent in a case that involved "over 100 distinct loan transactions with many different lenders [which were] were secured by separate properties scattered across the country, [some of which] were sold in foreclosure." *Id.* at 870. Again, just as the facts in *Coughlin* and *Woods* are distinguishable from the instant case, *Visendi* is yet another example of a case with far less overlaps, disconnected plaintiffs, and unrelated claims than are present here.

Defendants contend that "[t]he logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly wrongful acts, which give rise to the

MCLETCHIE LAW
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

individual claims, must share an aggregate of operative facts." (ECF No. 8, pp. 8:28, 9:1–4 (citation omitted).) Such a logical relationship exists among Plaintiffs' claims and factual allegations, and, in fact, severing Plaintiffs' claims and forcing them to be litigated separately would be illogical, as it would require the Court to decide similar motions, hear similar arguments, call the same witnesses, and review the same evidence. Defendants note "that the 'same transaction' requirement of Rule 20 'refers to *similarity in the factual background of a claim*.'" (ECF No. 8, p. 9:4–6, citing *Coughlin*, 130 F.3d at 1350 (emphasis added).) Because Plaintiffs' claims share an "aggregate of operative facts" and "significant similarity in the factual background" of their claims, the first prong of the permissive joinder test is met, and Plaintiffs' lawsuit should not be severed.

**2. Permissive Joinder Is Proper Because Plaintiffs' Claims Share a Common Question of Law or Fact.**

The second prong of the permissive joinder test is that "[p]ersons may join in one action as plaintiffs if . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B). Here, the bulk of Plaintiffs' claims are common to all Plaintiffs. Although some Plaintiffs have pleaded five claims that do not apply to other Plaintiffs (Claim 3 – chilling the right to free speech, Claims 4 and 5 – retaliation, Claim 8 – equal protection on the basis of race, and Claim 13 – conversion), the remaining nine claims are common to *all* Plaintiffs.[8] Thus, it is in the Court's interest—and the parties' interests, in order to conserve time, money, and other resources—not to sever the Plaintiffs' claims, as the bulk of the claims present questions of law or fact "common to all plaintiffs" in the action.

The common claims all demonstrate support for Plaintiffs' theory that Metro and its officers have a pervasive pattern and practice of engaging in excessive force against peaceful protesters. (ECF No. 1, ¶ 26.) Under Rule 20(a)(1)(B), permissive joinder is proper if *any* question of law or fact is common to all plaintiffs. Thus, because Plaintiffs share eight

---

[8] As discussed *infra*, Plaintiffs voluntarily drop the Twelfth Cause of Action for negligent training, supervision, and retention against all Defendants. It is counted here as one of the nine claims common to all Plaintiffs, but once it is dismissed, there will be eight remaining claims common to all Plaintiffs.

MCLETCHIE LAW
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

claims in common, the Court will need to answer questions of law *and* fact common to all Plaintiffs as to those eight claims, at a minimum. Therefore, the second prong of the permissive joinder test is met, and the Court should deny Defendants' Motion.

The eight remaining claims common to all Plaintiffs are: Claim 1 – federal claim alleging excessive force (ECF No. 1, ¶¶ 337–51), Claim 2 – violation of federal right to free speech (*Id.*, ¶¶ 352–64), Claim 6 – violation of right to assembly (*Id.*, ¶¶ 395–406), Claim 7 – violation of substantive due process (*Id.*, ¶¶ 407–12), Claim 9 – violation of equal protection (*Id.*, ¶¶ 418–34), Claim 10 – violation of state right to free speech (*Id.*, ¶¶ 435–42), Claim 11 – state claim alleging excessive force (*Id.*, ¶¶ 443–53), Claim 14 – intentional infliction of emotional distress. (*Id.*, ¶¶ 472–82.)

Even if the fact that Plaintiffs share eight causes of action is not sufficient, some of those claims overlap significantly, as similar claims were brought under both federal and state law. Notably, Claims 1 and 11 (both excessive force claims brought by all Plaintiffs) present similar questions of law and fact. Furthermore, Claims 2 and 10 (both free speech claims brought by all Plaintiffs) present similar questions of law and fact. While Defendants argue that the Court would need to take a "personalized" approach (ECF No. 8, p. 10:7) to evaluate Plaintiffs' various claims, that is not true of the eight aforementioned claims and is only somewhat true of the claims brought by less than all of the Plaintiffs: Claims 3, 4, 5, 8, and 13.

Of the five claims brought by less than all of the Plaintiffs, one was brought by five Plaintiffs, one was brought by two, one was brought by three, and only two were brought by a single Plaintiff. Claim 3, for chilling the right to free speech, was brought by five Plaintiffs—Downes-Covington, Sanchez, Kenady, Martin, and Molina—because they were the only Plaintiffs who felt chilled from participating in further protests because of Metro's conduct. (ECF No. 1, ¶¶ 365–75.) Claim 4, for retaliation, and Claim 8, for violation of equal protection on the basis of race, are the only two of Plaintiffs' fourteen claims that were brought by only one Plaintiff, Mr. Downes-Covington. (*Id.*, ¶¶ 376–83, 413–17.) Claim 5, for retaliation, was brought by Ms. Driscoll and Ms. Molina. (*Id.*, ¶¶ 384–94.) The underlying

factual allegations supporting Claim 5 are nearly identical, as Ms. Driscoll and Ms. Molina were partnered as legal observers at the same protest on the same date and were detained and arrested when they were standing within inches of each other. (*Id.*, ¶¶ 153, 173, 175, 267, 300–02.) Lastly, Claim 13 for conversion was brought by Ms. Sanchez, Ms. Martin, and Ms. Molina. (*Id.*, ¶¶ 464–71.) Ms. Sanchez's and Ms. Martin's conversion claims are for the same speaker that was destroyed by pepperballs on June 13, 2020, and Ms. Molina's claim is for pages of her legal observer notepad that were carelessly removed and lost during her arrest and for an ankle bracelet that was removed and discarded on the same day, following the same protest where Ms. Sanchez and Ms. Martin's speaker was destroyed beyond repair. (*Id.*, ¶¶ 106, 237, 306, 314.)

Defendants argue that Plaintiffs "fail to satisfy the second prong of the test for permissive joinder – common questions of law" because, apparently, "First Amendment claims, Fourth Amendment claims, Fourteenth Amendment claims, Nevada Constitution claims and state tort law claims" require application of "different legal standard [sic] to each incident" and "personalized attention by the court." (ECF No. 8, p. 10:3–7.) Defendants further contend that "each incident alleges that distinct plaintiffs suffered distinct and differing constitutional and/or state law violations from distinct defendants . . . While the facts pertain to protests that have generally occurred in Las Vegas, there are few facts and allegations that tie any of the occurrences together." (ECF No. 8, pp. 9:26–28, 10:1–2.) Defendants then conclude that "[t]herefore, the claims do not involve common questions or [sic] law or fact." (*Id.*, p. 10:10–11 (citing *Coughlin*, 130 F.3d at 1351).)

As discussed *supra*, Plaintiffs' common claims were pleaded based on the same series of transactions or occurrences—namely, the protests that they attended in Las Vegas between May 30 and July 4, 2020. Defendants attempt to argue that "distinct defendants" perpetrated the violation of Plaintiffs' rights, despite that Metro is a named defendant in all but one of the causes of action. This is unlike *Visendi,* which involved "over 100 different loan transactions with many different lenders" and therefore lacked anything uniting the plaintiffs "but the superficial similarity of their allegations and their common choice of

MCLETCHIE LAW
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

counsel…" *Visendi*, 733 F.3d at 870. Here, the Plaintiffs are united by far more than their common choice of counsel—similar violations of their constitutional rights at related protests at the hands of Metro and its employees. *See Knight v. City of Sacramento Police Dept.*, No. 2:12-cv-0346-JAM-KJN, 2014 WL 1883962, *3 (N.D. Cal. 2014) ("Even if the Court were to grant Defendants' motion to sever each Plaintiff's claim into a separate trial, the same evidence of each individual incident would be admissible, at each trial, to show a pattern of misconduct by Defendant City."); *Murnane v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-01088-MMD-PAL, 2015 WL 1442262, at *6–7 (D. Nev. Mar. 30, 2015) (declining to sever Plaintiffs' lawsuit regarding an officer's "allegedly improper conduct in stopping women without a legal basis and sexually harassing or abusing them" notwithstanding the fact that the alleged incidents happened months apart); *Livingston v. Kehagias*, No. 5:16-cv-906-BO, 2020 WL 6566847, at *1–2 (E.D.N.C. Nov. 9, 2020) (denying motion to sever where "[a]lthough each plaintiff alleges claims arising out of separate encounters with defendants which occurred on separate dates, the plaintiffs' claims are reasonably related and have a logical relationship to each other); *compare Cupp v. Harris*, No. 2:16-cv-00523-TLN-KJN, 2018 WL 4599588, at *6 (E.D. Cal. Sept. 21, 2018) (granting motion to sever where complaint "involves completely different plaintiffs, defendants, events, and jurisdictions, and the Court is unable to discern any reason for these claims being brought together").

This case is also unlike *Coughlin*, the case where forty-nine plaintiffs sued the INS regarding inaction on their individual and separate applications. As to the second prong, the district court in *Coughlin* reasoned that "each category of [plaintiffs] has filed different applications, petitions, or forms" and therefore, "the INS must apply different legal standards to each type of application or petition . . . [and] each applicant or petitioner presents a different factual situation . . . and must receive personalized attention by the INS and, ultimately, by the Court." *Coughlin*, 130 F.3d at 1351. The district court opined that "the interests of justice are not served by joinder of the Plaintiffs in this case" and emphasized that "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Id.* (citing *Guedry v. Marino*, 164 F.R.D. 181, 185 (E.D. La. 1995)). In

1   *Coughlin*, the court emphasized that it would need to individually assess each plaintiff's

2   claims and situation, as each plaintiff's application was at a different stage of being processed

3   and was grounded in wholly separate factual scenarios than the other plaintiffs. *Id.*

4          Unlike in *Coughlin*, the Court need not apply different legal standards to each of

5   Plaintiffs' claims in the instant case. With the exception of Mr. Downes-Covington's two

6   claims for equal protection on the basis of race and retaliation, all claims share at least two

7   Plaintiffs, with eight claims common to all seven Plaintiffs. Furthermore, Plaintiffs are not

8   at "different stages" in any process—their constitutional injuries occurred at the protests and

9   continue to this day.

10          In a peculiar and baseless argument, Defendants contend that "it appears that

11   plaintiffs have attempted to join the seven different lawsuits simply to avoid paying filing

12   fees." (ECF No. 8, p. 10:12–13.) Despite this accusation, Defendants present no explanation

13   or support for their argument. Contrary to Defendants' baseless beliefs, Plaintiffs' intent in

14   filing a single action was to encourage judicial efficiency by keeping similarly situated

15   plaintiffs together in a single action, which is entirely consistent with Fed. R. Civ. P. 1's

16   admonishment that parties should employ the Rules of Civil Procedure to "secure the just,

17   speedy, and inexpensive determination" of legal proceedings. Just as similarly situated

18   plaintiffs in recent protest cases—including *Abay v. City of Denver* (2020 WL 3034161 (D.

19   Colo. June 5, 2020)), *Black Lives Matter Seattle-King Cty. v. City of Seattle* (2020 WL

20   3128299 (W.D. Wash. June 12, 2020)), and *Don't Shoot Portland v. City of Portland* (2020

21   WL 3078329 (D. Or. June 9, 2020))—filed lawsuits with multiple plaintiffs alleging multiple

22   claims, so too did the plaintiffs here. For example, the Complaint filed in *Black Lives Matter

23   Seattle-King Cty. v. City of Seattle* identifies five individual plaintiffs who each attended

24   different Black Lives Matter protests in Seattle and Tacoma, ranging from nine days of

25   protests down to zero days of protests (at least one plaintiff was so chilled from protesting

26   that she did not attend any protests, "out of fear from the negative health effects of tear gas

27   and other chemical agents"). (*See* **Exh. 1**, *Black Lives Matter Seattle-King Cty.* Complaint,

28   ¶¶ 31–35.)

1    The district courts in each of the three aforementioned recent protest cases have not

2  *sua sponte* severed the plaintiffs' claims, as courts are permitted to do under Rule 21. Fed.

3  R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop

4  a party. The court may also sever any claim against a party"). As the three district courts

5  hearing similar cases to the instant case have not, on their own or on a motion, severed the

6  parties' claims, it appears that the courts concluded permissive joinder was proper, even

7  though parties alleged different claims arising from protests on different days.

8    Thus, because Plaintiffs' claims share many common questions of law and fact,

9  because the Court has considerable discretion to permit joinder of parties, because other

10  similarly-situated plaintiffs' claims were not severed, and because keeping the claims

11  together would support judicial efficiency and the resources of the parties, this Court should

12  deny Defendants' Motion and permit the case to proceed as filed.

13  **V.    CONCLUSION**

14    Based on the foregoing, this Court should deny Defendants' Motion to Sever the

15  Parties' Claims.

16    DATED this 17th day of November, 2020.

17

18                    */s/ Alina M. Shell*
                     MARGARET A. MCLETCHIE, Nevada Bar No. 10931
19                   ALINA M. SHELL, Nevada Bar No. 11711
                     LEO S. WOLPERT, Nevada Bar No. 12658
20                   DAYVID FIGLER, Nevada Bar No. 4264
                     MCLETCHIE LAW
21                   701 East Bridger Avenue, Suite 520
                     Las Vegas, NV 89101
22                   Telephone: (702) 728-5300
                     Email: maggie@nvlitigation.com
23                   *Counsel for Plaintiffs*

24

25

| INDEX OF EXHIBITS | |
|---|---|
| **Exh.** | **Description** |
| 1 | Complaint in *Black Lives Matter Seattle v. King Cty.* |

26

27

28